FILED
2026 Aug-20 PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **YORKTOWN SYSTEMS GROUP, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES SMALL BUSINESS ADMINISTRATION; AND KELLY LOEFFLER, in her official capacity as Administrator,**<br><br>*Defendants.* | Civil Action No. ______________ |

**VERIFIED PETITION FOR REVIEW OF AGENCY ACTION**

Yorktown Systems Group, Inc. brings this verified petition asking the Court to review and set aside the United States Small Business Administration's arbitrary, capricious and unlawful decision to terminate Yorktown's mentor-protégé agreement ("MPA") with Threat Tec, LLC for reasons even it does not believe are true. For the reasons described below, Yorktown asks the Court to set aside SBA's arbitrary and unlawful action.

**The Parties**

1. Yorktown is an Alabama corporation with its principal place of business in Huntsville, Alabama.

2. SBA is an executive branch agency, currently headed by Defendant Administrator Kelly Loeffler, sued here in her official capacity.

**Jurisdiction and Venue**

3. This action raises federal questions under the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 702. "Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review [a final] agency action." *Perez v. USCIS*, 774 F.3d 960, 965 (11th Cir. 2014); *see also Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020). There are two requirements for finality: (1) "the action must mark the consummation of the agency's decisionmaking process" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Canal A Media Holding, LLC*, 964 F.3d at 1255.

4. SBA took a final agency action when it terminated the MPA. As explained below, SBA terminated the MPA because Yorktown supposedly failed to mentor Threat Tec. In making this decision, SBA ignored evidence in its possession showing Yorktown's mentorship, and never gave Yorktown an opportunity to respond to Threat Tec's allegations. SBA completed the decision-making process when it issued the termination and stood by that decision. SBA

has not provided Yorktown any further administrative process through which to challenge or reverse the termination. Absent judicial review, SBA's decision is final and binding. There is no question that the termination is a final agency action. The Court has subject matter jurisdiction.

5. Venue lies in this district under 28 U.S.C. § 1391(e)(1)(C).

## SBA's Mentor-Protégé Program

6. SBA's mentor-protégé program (the "Program") allows small contractors (protégés) to form joint ventures with larger contractors (mentors) and pursue government contracting opportunities. *See* 13 C.F.R. § 125.8(d) (effective Dec. 27, 2016, to Nov. 15, 2020); *see also* § 121.103(h)(3) (effective May 25, 2018, to Dec. 29, 2019).[1]

7. SBA requires mentors and protégés to enter into a written agreement, generally called a "mentor-protégé agreement." *See* § 125.9(e)(1) (effective Aug. 24, 2016, to Nov. 15, 2020). The agreement generally specifies the areas or business functions in which the mentor agrees to provide mentorship and guidance to its protégé. *Id.* SBA must review and approve the agreement before a mentor and protégé will be admitted to the Program. § 125.9(e)(3).

[1] We cite to the regulation in effect on July 9, 2019, the effective date of the MPA.

8. "Unless rescinded in writing as a result of [SBA's] review, the mentor-protégé relationship will automatically renew without additional written notice of continuation or extension to the protégé firm." § 125.9(e)(5). "The term of a mentor-protégé agreement may not exceed three years, but may be extended for a second three years." *Id.* Mentor protégé agreements may be extended "provided the protégé has received the agreed-upon business development assistance and will continue to receive additional assistance through the extended mentor-protégé agreement." *Id.*

9. The SBA reviews each mentor-protégé relationship annually. *See id.* As part of that evaluation, SBA requires protégés to assess the relationship in writing, addressing "[a]ll technical and/or management assistance provided by the mentor to the protégé" as well as "the success such assistance has had in addressing the developmental needs of the protégé and … any problems encountered." §§ 125.9(g)(1)(i), (v). The protégé must report to SBA "the mentoring services it receives by category and hours" and "certify … whether there has been any change in the terms of the agreement." §§ 125.9(g)(2), (3).

10. If SBA finds that a mentor "may not have provided" the assistance envisioned, it must follow this regulatory process:

> SBA will notify the mentor of such determination and afford the mentor an opportunity to respond. The mentor must respond

within 30 days of the notification[.]

§ 125.9(h)(1)(i). SBA has the option to terminate the relationship where "the mentor fails to respond, does not adequately provide information demonstrating that it did satisfactorily provide the assistance set forth in the mentor-protégé agreement, does not supply adequate reasons for its failure to provide the agreed upon assistance, or does not set forth a definite plan to provide the assistance[.]" *Id.*

**Yorktown forms a Mentor-Protégé relationship with Threat Tec, LLC**

11. In 2019, Yorktown and Threat Tec decided to team together to pursue a contract supporting the Army's Training and Doctrine Command ("TRADOC") by forming a joint venture under the Program's rules.

12. Threat Tec and Yorktown entered into the MPA, as applicable regulations required. (*See* Exhibit A.) The MPA identified five categories in which Yorktown would mentor and assist Threat Tec: (1) Management and Technical Assistance; (2) Financial Assistance; (3) Contracting Assistance; (4) Business Development Assistance; and (5) General Administrative Assistance.[2] (*Id.*, pp. 1-3.) Each category established its own way to measure whether the

[2] The MPA contained a row for International Trade Educational Assistance, but Yorktown never agreed to provide that assistance and marked it "N/A." (Exhibit A, p. 3.)

relationship was successful, on a yearly basis. (*See id.* (noting measurements for "Year 1", "Year 2" and "Year 3").)

13. Tracking the relevant regulation, the MPA established a process to address Yorktown's alleged failure to provide mentorship:

> Pursuant to 13 C.F.R. 125.9(h), should the Mentor breach this Mentor-Protégé Agreement to provide mutually agreed-upon assistance to the Protégé, the Mentor understands that, **after affording the Mentor an opportunity to respond to allegations of noncompliance**, SBA may … terminate the Mentor-Protégé Agreement[.]

(*Id.*, p. 4 (emphasis added).)

14. Threat Tec's CEO, Jim Crawford, filed the mentor-protégé application with SBA, which SBA approved on July 9, 2019. (*See* Exhibit B.)

**Yorktown successfully mentors Threat Tec**

15. After SBA approved the MPA, Threat Tec and Yorktown formed a joint venture to pursue the TRADOC contract opportunity, and called it Threat Tec – Yorktown JV, LLC (the "JV"). The JV ultimately won the TRADOC contract.

16. "Threat Tec experienced significant turnover … in the first two years performing the TRADOC Contract." (Exhibit C, ¶ 12.)[3] As a result, Threat Tec asked Yorktown to provide "a variety of business functions," such as "systems implementation, accounts receivable/payables, program control, scheduling, contract management, recruiting, security functions, travel coordination, and financial reporting." (*Id.*) To provide this support, Threat Tec granted Yorktown's "personnel access into Threat Tec's accounting system." (*Id.*, ¶ 13; *see also* Exhibit D, ¶ 3 (noting that she provided "administrative and back-office support by logging into [Threat Tec]'s Costpoint").) Yorktown also trained and mentored Threat Tec "to implement the accounting system[;]" "develop specific processes for project startup and invoicing[;]" "configure[] the needed reporting systems[;]" and "explor[e] and manag[e] compliance with regulatory issues[,]" among other things. (Exhibit C, ¶¶ 13, 14, 15.)

17. With Yorktown's support and mentorship, Threat Tec also won the SOCOM SOF Core Services IDIQ contract, along with hundreds of millions of dollars in task orders. One of those task orders was SOCOM's Language Regional Expertise and Cultural ("LREC") task order, for which Yorktown was the

[3] The declaration in Exhibit C was previously filed with thirteen attachments in *Yorktown Sys. Grp., Inc. v. Threat Tec, LLC, et al.*, Case No. 5:22-cv-0496-LCB (N.D. Ala.). We did not include the declaration's attachments here because they are not necessary to resolve the issues in this petition.

incumbent contractor.

18. Threat Tec filed four annual evaluations with SBA about its relationship with Yorktown. For Year 1, Threat Tec told SBA that Yorktown provided the assistance the MPA required, and that Threat Tec benefitted from Yorktown's mentorship.

19. Threat Tec's Year 2 report contained effusive praise for Yorktown and its mentorship. (*See* Exhibit E.) Threat Tec showed SBA that Yorktown provided more hours of mentorship in every category than the MPA required, as detailed below:

| **Area of Assistance** | **Assistance Hours Outlined in MPA** | **Actual Assistance Hours Provided by Yorktown** |
|---|---:|---:|
| Management and Technical Assistance | 200 | 600 |
| Financial Assistance | 400 | 600 |
| Contracting Assistance | 400 | 2,000 |
| International Trade Assistance | 0 | 200 |
| Business Development Assistance | 1,500 | 2,000 |
| General / Administrative Assistance | 500 | 700 |
| **Total Hours** | **3,000** | **6,100** |

(*See id.*, pp. 3-5.)

20. Threat Tec agreed it received "material benefits" from Yorktown's mentorship, including growth in annual revenue from $12 million to $15 million by Year 2. (*Id.*, pp. 5, 12.) Threat Tec attributed this growth to Yorktown's mentorship and the Program. (*Id.*) Overall, Threat Tec thought Yorktown had "been a great mentor and partner." (*Id.*, p. 13.)

**Tensions between Yorktown and Threat Tec lead to litigation**

21. Yorktown's relationship with Threat Tec soured in 2022, which lead to a lawsuit. *See Yorktown Sys. Grp., Inc. v. Threat Tec, LLC, et al.*, Case No. 5:22-cv-0496-LCB (N.D. Ala.) (the "2022 Case"). In response, Mr. Crawford sent a letter to Yorktown on Threat Tec's behalf trying to terminate all of Yorktown's work on the TRADOC contract. Ultimately, the Honorable Judge Liles C. Burke enjoined that termination. *See Yorktown Sys. Grp., Inc. v. Threat Tec, LLC, et al.*, No. 5:22-CV-0496-LCB, 2022 WL 16629959 (N.D. Ala. Sept. 22, 2022), *aff'd,* 108 F.4th 1287 (11th Cir. 2024). Judge Burke was "unable to give [Mr. Crawford's] testimony much weight" because of a series of uncorrected false statements. *Id.* at *4. Judge Burke concluded that "Mr. Crawford's lack of candor with the Court … le[d] it to believe that his motives for terminating the subcontract were not entirely ethical." *Id.* at *12.

22. Judge Burke also explained "[t]hat a protégé such as Threat Tec would attempt to use its status as the manager of the JV to cut its mentor out of the very contracting opportunity the mentor helped the protégé to secure is the epitome of disloyalty." *Id.*

23. The United States Court of Appeals for the Eleventh Circuit agreed, noting that Judge Burke "aptly characterized what Threat Tec had done to Yorktown as 'the epitome of disloyalty.'" *Yorktown Sys. Grp. Inc. v. Threat Tec LLC, et al.*, 108 F.4th 1287, 1293 (11th Cir. 2024).

**Threat Tec complains to SBA**

24. Shortly after Judge Burke's preliminary injunction proceedings in August of 2022, Mr. Crawford changed his tune to the SBA, insisting that Yorktown had not mentored Threat Tec. (Exhibit F.) In the Year 3 report, Threat Tec listed "0" as the number of mentoring hours the MPA outlined for each category of assistance. (*Id.*, pp. 3-5.)

25. Here is what Mr. Crawford told SBA about YSG's mentorship in the Year 3 report:

> The parties are currently subject to a temporary restraining order in the lawsuit filed by Mentor which governs the actions that can be taken with regard to the parties' relationship at this time; however, TT requests the SBA's assistance in addressing

> these issues within the MP relationship which is no longer beneficial for either party.

(*Id.*, p. 13.) Still, Threat Tec had to admit that Yorktown's assistance "result[ed] in material benefits or developmental gains for" Threat Tec. (*Id.*, p. 5.) Threat Tec revealed its annual income increased to nearly $40 million, $28 million more than when it formed the MPA. (*Id.*, p. 11.) Threat Tec admitted that Yorktown's assistance drove revenue growth. (*Id.*)

26. On July 8, 2024, Mr. Crawford submitted Threat Tec's Year 4 report. (Exhibit G.) There, relying on a March 7, 2024 "Forvis report," Threat Tec accused Yorktown of failing to mentor it in the past four years. (*See id.*) Yorktown was not asked to provide any information for the Forvis report. It was generated based on information solely provided by Threat Tec. To clear up the contradictions with previous reports it submitted to SBA, Threat Tec said that the Year 4 "report supersedes all prior reports," and in the event of an inconsistency, the Year 4 "report shall control." (*Id.*, p. 4.)

27. On July 9, 2024, SBA promised to contact Mr. Crawford with any questions about the Year 4 report. (Exhibit H, p. 10.)

28. SBA apparently had a conversation with Mr. Crawford on or about July 15, 2024. (*Id.*, pp. 8-9.) SBA then gave Mr. Crawford information about

voluntarily terminating the MPA, SBA's role in termination, and the procedure to substitute a mentor. (*Id.*) Here is how SBA told Mr. Crawford it would handle complaints about Yorktown's mentorship, or alleged lack thereof:

> If the protégé does not believe he/she is receiving the agreed upon business assistance from the mentor, SBA can intervene upon receiving such documentation from the protégé. SBA will then inform the mentor of such determination and afford the mentor an opportunity to respond within 30 days with a definitive plan to provide such assistance.

(*Id.*, p. 8.)

**SBA terminates the MPA for shifting reasons, without following its own procedure**

29. On July 23, 2024, SBA apparently terminated the MPA because Threat Tec failed to submit the annual evaluation. (*See* Exhibit I.)

30. Despite the supposed termination, Mr. Crawford continued having conversations with SBA about the MPA and Yorktown. On October 28, 2024, Mr. Crawford reached out to Mark Hagedorn, an Attorney-Advisor at SBA, to discuss "ongoing issues in [the] Mentor-Protégé relationship." (Exhibit J, p. 6.) Mr. Crawford provided additional documents to Mr. Hagedorn on October 30, and met with him on or about October 31. (*Id.*, pp. 3-5.) Neither Threat Tec nor Mr. Hagedorn told Yorktown about these discussions, invited it to participate or provide any documentation.

31. Based on the information Threat Tec provided and conversations Mr. Crawford had with SBA, Mr. Hagedorn determined that "SBA might have grounds to terminate the MPA[.]" (*Id.*, pp. 2-3.) Mr. Hagedorn invited Threat Tec to submit even more documents, and cautioned that in an inquiry, SBA "would likely share" them "with Yorktown[.]" (*Id.*) That did not happen.

32. On January 6, 2025, Threat Tec told SBA that Yorktown "gain[ed] unauthorized access" to Threat Tec's system. (Exhibit K.) That access was controlled and managed by Threat Tec. And Threat Tec was on notice of the supposed access in July 2022 (at the latest), when Yorktown's personnel filed declarations in the 2022 Case about their access. (*See* Exhibits C, D.) Still, SBA did not relay those allegations to Yorktown.

33. Threat Tec's counsel followed up with SBA on January 8, 2025, by "renew[ing] [the] request [for] SBA [to] immediately terminate the MPA[.]" (Exhibit J, p. 1.) John Klein, SBA's Deputy General Counsel, said that SBA was "processing the termination[.]" (*Id.*)

34. According to Mr. Crawford, "SBA had officially terminated the agreement" between Threat Tec and Yorktown in January 2025. (Exhibit H, p. 7 (emphasis omitted).) But on February 26, 2025, Mr. Crawford claimed he had not received "any formal documentation" and that "eCertify still reflects a

'Recommended Termination' status[.]" (*Id.* (emphasis omitted).)

35. The next day, on February 27, SBA told Mr. Crawford it issued a program termination for the MPA. (*Id.*, p. 4.) Yorktown was still left in the dark.

36. On March 10, Mr. Crawford emailed SBA to "clarify" whether the termination of the MPA was due to Threat Tec's noncompliance with annual evaluation requirements. (*Id.*, p. 3.)

37. Mr. Klein responded with a new notice dated March 12, 2025, claiming the July 23, 2024, notice

> mischaracterized the reason SBA terminated the mentor-protégé agreement. To clarify, this termination was not based on noncompliance; it is based solely on the information provided to SBA regarding Yorktown's failure to provide mentoring to Threat Tec.

(Exhibit I.) Mr. Klein sent the updated notice to Mr. Crawford on March 13, 2025. (Exhibit H, p. 3.)

38. SBA never contacted Yorktown or otherwise sought its input before issuing the termination or updating the letter. Indeed, SBA did not even send Yorktown the notice until May 20, 2025. (*Id.*, p. 1.)

39. On June 3, 2025, Matthew Schoonover wrote Mr. Klein on Yorktown's behalf, explaining that SBA's conclusion was directly contrary to

Threat Tec's annual reports admitting to Yorktown's mentorship and the millions in benefits received from its relationship with Yorktown. (Exhibit L, ¶ 4; *see also* Exhibit L, Attachment 1.) The letter also noted that SBA violated its own regulations by terminating the MPA for Yorktown's supposed failure to mentor without notifying Yorktown or giving it a chance to respond. (Exhibit L, Attachment 1, p. 4.)

40. Mr. Schoonover tried to call Mr. Klein to follow up on June 5, June 9, June 10 and June 11, but was not able to speak with him each time. (*See* Exhibit L, ¶ 5.)

41. On June 11, 2025, Mr. Schoonover exchanged texts with Mr. Klein about the termination. (*Id.*) "Mr. Klein said 'the letter was fine' even though SBA believes 'both sides [were] somewhat at fault.'" (*Id.*; *see also* Exhibit L, Attachment 2.) Of course, that is not what the termination letter says. (*See* Exhibit I.) It puts all the blame (incorrectly) on Yorktown.

42. SBA has not said anything else about the termination, and its March 12 letter remains active.

**Count One – SBA's finding that Yorktown failed to mentor Threat Tec was arbitrary and capricious.**

43. Yorktown adopts and incorporates the factual allegations in the paragraphs above, as if fully set forth herein.

44. "The APA provides that a reviewing court shall 'hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law ….'" *Kirkpatrick v. White*, 351 F. Supp. 2d 1261, 1270 (N.D. Ala. 2004) (quoting *Miccosukee Tribe of Indians of Fla. v. United States, et al.*, No. 95-0533-CIV-DAVIS, 1998 WL 1805539, at *13 (S.D. Fla. Sept. 14, 1998)); *see also U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1279 (11th Cir. 2007) (citing 5 U.S.C. § 706(2)(A)). "To prove an agency's decision was arbitrary and capricious, the challenging party must show the record is devoid of reasonable evidence supporting the agency's decision." *Kirkpatrick*, 351 F. Supp. 2d at 1271 (quoting *Miccosukee Tribe of Indians of Fla.*, 1998 WL 1805539, at *14).

45. "To survive arbitrary and capricious review, an agency must 'examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."'" *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1321 (11th Cir. 2021) (quoting *Nat'l Mining Ass'n, et al., v. Sec'y, U.S. Dep't of Lab., et al.*, 812 F.3d

843, 865 (11th Cir. 2016) (quoting, in turn, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))); *see also Black Warrior Riverkeeper, Inc. v. Ala. Dep't of Transp.*, No. 2:11-CV-267-WKW, 2016 WL 233672, at *8 (M.D. Ala. Jan. 19, 2016) ("The APA requires that, at the administrative stage of the proceedings, 'the agency must examine the relevant data and articulate a satisfactory explanation for its action including "a rational connection between the facts found and the choice made."'" (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43)); *Gray Television, Inc. v. Fed. Commc'ns Comm'n*, 130 F.4th 1201, 1212 (11th Cir. 2025) ("The APA's arbitrary-and-capricious standard requires that the agency action be reasonable and reasonably explained." (quoting *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021))).

46. SBA's March 12 notice said only this:

> To clarify, this termination was not based on noncompliance; it is based solely on information provided to SBA regarding Yorktown's failure to provide mentoring to Threat Tec.

(Exhibit I.) When SBA made that decision, it had records in its possession, signed by Threat Tec under penalty of law, calculating how much mentorship Yorktown provided in each category. (*See* Exhibit E, pp. 3-5.) Threat Tec described Yorktown as a "great mentor and partner," with good reason—Yorktown helped

add at least $28 million to Threat Tec's revenue column. (*Id.*, p. 13; *see also* Exhibit F, p. 11.)

47. SBA's own documentation showed its conclusion that Yorktown "fail[ed] to provide mentoring to Threat Tec" was fundamentally false, meaning SBA acted arbitrarily and capriciously. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (noting that "an agency rule would be arbitrary and capricious if the agency … offered an explanation for its decision that runs counter to the evidence before the agency").

48. Moreover, SBA's March 12 notice did not explain what evidence it relied on when it came to its conclusion, or how it decided that Yorktown failed to mentor Threat Tec despite clear evidence to the contrary. That, too, was insufficient to establish rational agency action. *See Sierra Club v. Martin*, 168 F.3d 1, 5 (11th Cir. 1999) ("Agency actions must be reversed as arbitrary and capricious when the agency fails to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (internal citations omitted)).

49. The APA also requires the Court to take "due account … of the rule of prejudicial error." *United States v. Schwarzbaum*, 24 F.4th 1355, 1366 (11th Cir. 2022); *see also Bidi Vapor LLC v. U.S. Food & Drug Admin.*, 47 F.4th 1191, 1205

(11th Cir. 2022). "An administrative body's APA deficiency is not prejudicial when [it] is one that clearly had no bearing on the procedure used or the substance of the decision reached." *Black Warrior Riverkeeper, Inc. v. United States Army Corps of Eng'rs*, 354 F. Supp. 3d 1253, 1272 (N.D. Ala. 2018) (cleaned up). In conducting this analysis, the Court "do[es] not presume to guess what the [agency] will do." *Schwarzbaum*, 24 F.4th at 1366. Rather, prejudicial error occurs where the agency "may reach a different result" if it were to redo the analysis error-free. *See id.*

50. SBA's error was prejudicial. The only contemporaneous, express basis for the termination was Yorktown's supposed failure to mentor Threat Tec. Had SBA considered the evidence it already had, it could have concluded that Yorktown satisfied its mentoring obligations under the MPA. SBA's failure went directly to the substantive basis for the decision. That is more than sufficient to demonstrate prejudice. *See Schwarzbaum*, 24 F.4th at 1366.

**Count Two – SBA's failure to give Yorktown an opportunity to respond before terminating the MPA was contrary to law.**

51. Yorktown adopts and incorporates the factual allegations in the paragraphs above, as if fully set forth herein.

52. As noted above, SBA was bound by law to give Yorktown notice and an opportunity to respond before terminating the MPA for supposedly failing to mentor Threat Tec. 13 C.F.R. § 125.9(h)(1). By regulation, SBA could only terminate the MPA if, having been notified of the alleged mentorship deficiencies, Yorktown failed to (1) respond to SBA's inquiry; (2) supply adequate information showing it did provide the required mentorship; (3) supply adequate reasons for the lack of mentorship; or (4) set forth a plan to provide the mentorship. *See id.*

53. SBA did not abide by its regulatory process. At no point before terminating the MPA did SBA notify Yorktown that it believed Yorktown failed to mentor Threat Tec. SBA did not tell Yorktown about Threat Tec's allegations or the documents provided. SBA did not request any documents, information or explanation from Yorktown concerning its mentorship efforts. Moreover, Yorktown did not receive the termination letter until May 20, 2025, months after the decision had already been made.

54. SBA made a determination without ever hearing Yorktown's side of the story. By terminating the MPA without first notifying Yorktown of the allegations and affording it the opportunity to respond, as relevant regulations required, SBA acted contrary to law.

55. SBA's failure to provide Yorktown notice and an opportunity to respond before terminating the MPA was likewise prejudicial. Had SBA followed the proper procedure, Yorktown would have submitted evidence demonstrating that it had provided mentorship; explained or rebutted Threat Tec's allegations; or, if SBA believed additional mentorship was warranted, proposed a plan to address any perceived deficiencies—all responses the regulation expressly contemplated. Had SBA afforded Yorktown that opportunity, it would not have terminated the MPA. SBA's procedural violation deprived Yorktown of the very process designed to inform SBA's decision, bearing directly on the substance of SBA's determination. The error was not a harmless one, and as such, prejudiced Yorktown.

## Prayer for Relief

WHEREFORE, Yorktown respectfully requests that this Court:

A. Declare SBA's finding that Yorktown failed to mentor Threat Tec arbitrary and capricious;

B. Declare SBA's failure to give Yorktown notice and an opportunity to respond to Threat Tec's allegations contrary to law;

C. Declare SBA's termination decision arbitrary, capricious and contrary to law;

D. Enter an order setting aside SBA's March 12, 2025, notice in its entirety; and

E. Grant Yorktown such other and further relief as the Court deems just and proper.

## Verification

Rebecca Suzanne Mathew, as President and Chief Financial Officer of Plaintiff Yorktown Systems Group, Inc., being first duly sworn, deposes and says that she has read the foregoing Verified Petition for Review of Agency Action and knows the contents thereof, and that the same is true to the best of her knowledge and belief.

This the 20th day of August, 2026.

Rebecca Suzanne Mathew
Rebecca Suzanne Mathew
President and Chief Financial Officer,
Yorktown Systems Group, Inc.

Sworn and subscribed to before me, this 20th day of August, 2026.

BRIDGETT WHITE BAILEY NOTARY PUBLIC ALABAMA STATE AT LARGE

Bridgett White Bailey
Notary Public
My commission expires: 11-29-27

Dated: August 20, 2026

Respectfully submitted,

/s/ *W. Brad English*
W. Brad English
Emily J. Chancey
Taylor R. Holt

*Attorneys for Plaintiff Yorktown Systems Group, Inc.*

**OF COUNSEL:**

MAYNARD NEXSEN PC
223 Washington St. NE, Suite 500
Huntsville, Alabama 35801
Telephone: 256.512.5705
Facsimile: 256.512.0119
benglish@maynardnexsen.com
echancey@maynardnexsen.com
taholt@maynardnexsen.com

**SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

United States Small Business Administration
Office of General Counsel
c/o Wendell Davis, Esq., General Counsel
409 3rd Street SW
Washington, DC 20416

United States Small Business Administration
c/o The Honorable Kelly Loeffler, Administrator
409 3rd Street SW
Washington, DC 20416

United States Department of Justice
Office of the Attorney General
c/o The Honorable Todd Blanche, Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530

Office of the United States Attorney
Northern District of Alabama
Civil Division – Process Clerk
1801 4th Avenue North
Birmingham, Alabama 35203